## WICHITA COCA COLA BOTTLING CO. v. UNITED STATES.

### Civil Action No. 226.

District Court, N. D. Texas,
Wichita Falls Division.

March 30, 1945.

### Agreed Statement of Facts

It is hereby stipulated by and between the parties hereto, by their respective at-

torneys, that the following facts shall be taken as true in this case, provided, however, that this stipulation shall be without prejudice to the right of either party to introduce other and further evidence not inconsistent with the facts here stipulated as true.

I. The amount involved in this suit is less than Ten Thousand Dollars ($10,000), and this Court has jurisdiction under Title 28, Section 41, of the United States Code, 28 U.S.C.A. § 41.

II. The Wichita Coca Cola Bottling Company is a corporation, duly incorporated under the laws of the State of Texas, with its principal office in Wichita Falls, Wichita County, Texas. From its inception in 1919 through 1939 the company had a reserve account set up for deposits on cases and bottles taken out by customers. The income tax return for 1919, however, only covered the last sixteen days of such year and did not include any balance sheet or break-down of costs of goods sold, a certified photostatic copy of such return is attached hereto, marked Exhibit 1, and made a part hereof. The return for 1920 listed an item under "Schedule A–12 Expenses" and designated it "Cases and Bottles, replacing wastage, etc." The return for 1921 listed such account under "Schedule A.12 Necessary Expenses" and designated it "Cases & Bottles, Breakage," and the return under "Liabilities" also listed "Deposits" of $517.67. Certified photostatic copies of the returns for 1920 and 1921 are attached hereto, marked respectively, Exhibits 2 and 3, and made a part hereof. The returns for 1922, 1923 and 1924 listed such account under "Other Liabilities" as "Deposit on Containers," certified photostatic copies of such returns are attached hereto, marked respectively, Exhibits 4, 5 and 6, and made a part hereof. The returns for the years 1925, 1926, 1927, 1928, 1929 and 1930 listed such account under "Other Liabilities" as "Deposit on Cases & Bottles," certified photostatic copies of such returns are attached hereto, marked respectively, Exhibits 7, 8, 9, 10, 11 and 12, and made a part hereof. The returns for the years 1931, 1932 and 1933 listed such account under "Other Liabilities" as "Cases and Bottles Deposit," certified photostatic copies of such returns are attached hereto, marked respectively Exhibits 13, 14 and 15, and made a part hereof. The returns for the years 1934, 1935, 1936, 1937, 1938 and 1939 listed such account under "Other Liabilities" as "Deposit on Cases & Bottles," certified photostatic copies of such returns are attached hereto, marked respectively Exhibits 16, 17, 18, 19, 20 and 21, and made a part hereof. A certified photostatic copy of the income tax return filed by taxpayer for 1940 is also attached hereto, marked Exhibit 22, and made a part hereof.

III. When cases and bottles were delivered to customers a deposit was required from the customer. This deposit was credited to the aforementioned account, and if and when the cases and bottles were returned, the deposit was returned to the customer or to whoever brought them in to the taxpayer, and the account was thereupon debited. The amount received for the beverage itself was credited to the sales account. The taxpayer had about nine hundred (900) dealers, of which amount credit was extended to only about forty-five (45). Those to whom credit was extended were billed at the end of the month at the price of One and 30/100 Dollars ($1.30) per case. The statement itself made no reference to a deposit. When cases were sold to cash customers invoices were rendered to them, which invoices showed a charge of One and 30/100 Dollars ($1.30) per case, but which invoice also had thereon a place showing the number of cases returned, which were credited at the rate of 50 cents per case and the cash customer paid the difference between $1.30 per case and the number of cases returned which were credited at the rate of 50 cents per case.

IV. The taxpayer during the period involved, bottled and sold Coca Cola, Orange Crush, Delaware Punch and during some of the period, other soft drinks. Each of the types of drinks had a distinctive shaped bottle and had their names imprinted in the glass. All of the cases had the wording "Drink Coca Cola in Bottles" stenciled on the outside of the cases. About 60 per cent of such cases had the letters "WFCC" also stenciled on the outside. About 40 per cent of the cases had the wording "Wichita Coca Cola Bottling Company, Wichita Falls, Texas," stenciled on the inside. The taxpayer made no attempt to collect the cases from the dealers or individuals. The deposit of 50 cents for the cases and bottles was, however, paid to each customer or whoever brought in the cases and the type of bottles in which taxpayer bottled its drinks.

This was done regardless of whether the bottle had the taxpayer's name on the bottom of it or not.

V. An inventory of the cases and bottles was taken each year, but this inventory did not include the cases and bottles which had been delivered to the customers and which had not been returned at the time of the inventory. As a result of the non-return of cases and bottles, the reserve listed in the federal income tax returns for the years 1919 through 1939, which are a part of the stipulation, increased from year to year. The table below shows the balance by years, beginning in 1919, and the increase or decrease for each of those years:

VI. At the end of the year 1939 the credit balance in this account was $10,261.-32. In the year 1940, Internal Revenue Agent Jarrett made an audit of the Company's 1937, 1938 and 1939 income tax statements. In that audit, he determined the increase in the size of the credit balance for each of those years was income and corrected the income tax return which had been previously made by the Wichita Coca Cola Bottling Company by including in the income for the year 1937 a profit of $421.45; for the year 1938 a profit of $569.47 and for the year 1939 a profit of $159, making the total correction of $1,149.92, which is the same amount that this account increased during the

| Year Ended December 31 | Total Debits | Total Credits | Balance End of Year | Increase During Year |
|---|---|---|---|---|
| 1919 | $ 170.05 | $ 89.40 | $ (80.65)* | $ (80.65) |
| 1920 | 18,479.04 | 18,526.50 | (33.19) | 46.46 |
| 1921 | 9,008.31 | 9,559.47 | 517.97 | 551.16 |
| 1922 | 21,055.22 | 21,846.26 | 1,309.01 | 791.04 |
| 1923 | 33,381.04 | 33,709.98 | 1,637.95 | 328.94 |
| 1924 | 16,460.07 | 18,166.59 | 3,344.47 | 1,706.52 |
| 1925 | 19,561.40 | 21,491.96 | 5,275.03 | 1,930.56 |
| 1926 | 16,343.61 | 17,569.87 | 6,501.29 | 1,226.26 |
| 1927 | 15,765.41 | 15,730.21 | 6,466.09 | (35.20) |
| 1928 | 7,397.18 | 7,996.83 | 7,065.74 | 599.65 |
| 1929 | 8,784.35 | 9,286.31 | 7,567.70 | 501.96 |
| 1930 | 7,903.56 | 8,120.24 | 7,784.38 | 216.68 |
| 1931 | 4,702.47 | 4,575.50 | 7,657.41 | (126.97) |
| 1932 | 3,226.87 | 3,319.37 | 7,749.91 | 92.50 |
| 1933 | 4,494.90 | 4,707.02 | 7,962.03 | 213.12 |
| 1934 | 7,448.43 | 7,854.50 | 8,368.10 | 406.07 |
| 1935 | 7,599.50 | 7,922.35 | 8,690.95 | 322.85 |
| 1936 | 9,774.05 | 10,194.50 | 9,111.40 | 420.45 |
| 1937 | 11,109.05 | 11,530.50 | 9,532.85 | 421.45 |
| 1938 | 15,029.38 | 15,598.85 | 10,102.32 | 569.47 |
| 1939 | 13,688.60 | 13,847.60 | 10,261.32 | 159.00 |
| | $251,382.49 | $261,643.81 | | $10,261.32 |

* "(—)" shows Decrease.

Mr. E. A. Denny, who became manager of the taxpayer in 1930, from past experience knew that the amount credited to the Reserve account each year was in excess of the amount which would have to be paid out on account of the return of cases and bottles, which he knew to be true by reason of the fact that there was always breakage or destruction of bottles and cases in the hands of customers, and which he also knew by reason of his previous experience and his knowledge of the increase in the account each year as reflected by the books.

three years 1937 to 1939, inclusive. When he charged these items to profit for each of those years, an adjustment was made debiting the account called "Deposit on Cases and Bottles" for this amount and crediting that amount to profit for the several years. After this debit had been made, the balance of the account at the beginning of the year 1940 was $9,111.40.

VII. In the year 1940 the plaintiff debited the account called "Deposit on Cases and Bottles" with $9,111.40, which took that account off of the books and credited the same amount to surplus. They made

their income tax returns without considering the $9,111.40 as income for the year 1940. In an audit made by the Internal Revenue Agent in the year 1942 and covering the 1940 income tax return, the Collector of Internal Revenue assessed a deficiency of $2,058.42 in taxes and $129.93 in interest, or a total of $2,188.35. Of this amount $2,183.99 was paid on April 3, 1942, and the balance of $4.36 was paid on May 4, 1942.

VIII. The Collector of Internal Revenue contended that the $9,111.40 was income for the year 1940 and found that the net income of the plaintiff for that year was $63,367.10 instead of $54,790.30, which had been returned as income by the plaintiff, but later corrected to $54,255.70, and by reason of this determination assessed the additional tax.

IX. On February 17, 1944, within less than two years after the payment of the tax, the plaintiff filed with the Collector of Internal Revenue for the Second District of Texas at Dallas, Texas, a Claim for Refund in the amount of $2,186.73, together with interest and any greater amount that was legally refundable. On November 21, 1944, the Commissioner of Internal Revenue rejected the Claim and denied it in its entirety. A certified photostatic copy of such return and letter of rejection is attached hereto, marked Exhibit 23, and made a part hereof.

X. The returns of the taxpayer for all years except 1928, 1931, 1932 and 1934 were investigated. In its 1920 return (Exhibit 2), the taxpayer listed as an expense "Cases and Bottles, replacing wastage, etc. ...... $20,186.31." Thereupon, Deputy Commissioner E. H. Batson in a letter dated December 8, 1921 inquired of taxpayer if such item represented the amount of actual loss sustained on account of bottle breakage and losses, or did it also include purchases of cases and bottles which should be included in inventories. In a letter dated December 24, 1921, A. M. Biedenhorn, then Secretary and Treasurer of taxpayer, replied that the taxpayer carried an account "Cases and Bottles" to which all purchases of cases and bottles were debited; that upon closing its books an inventory of all cases and bottles was taken and credited to such account and that the resultant difference represented the value of cases and bottles lost. Certified photostatic copies of such letters of December 8 and 24, 1921, are attached hereto, marked respectively Exhibits 24 and 25, and made a part hereof.

In connection with the audit of the 1924-1926 returns, the Bureau of Internal Revenue questioned the Deposit account and the apparent reduction of income by the annual increase in that account. An agent who investigated reported that no part of the account was charged to profit and loss since the money was collected to insure return of the containers and would ultimately be returned 100 cents on the dollar.

The years 1920 and 1921 were closed by a decision of the Board of Tax Appeals (6 B.T.A. 1333), but on a distinct issue. The 1922 and 1923 liabilities were the subject of a closing agreement and stipulated deficiencies in the Board, and the 1924-1926 liabilities were closed by closing agreement, but the deposit account was not considered except as hereinbefore stated in this paragraph and paragraph VI hereof.

XI. If the sum of $9,111.40, which was credited by the plaintiff to surplus in the year 1940, was income for the year 1940, then in such event the plaintiff is not entitled to recover. If, on the other hand, that sum was not income in the year 1940, then the plaintiff is entitled to recover the sum of $2,188.35, together with interest on $2,183.99 from and after April 3, 1942, and interest on $4.36 from and after May 4, 1942, unless the defendant's affirmative defense prevents the plaintiff from recovery.

Nelson, Montgomery & Robertson, of Wichita Falls, Tex., for plaintiff.

Robert R. Reynolds, Jr., Sp. Asst. to Atty. Gen., and Wm. P. Walker, Asst. U. S. Atty., of Fort Worth, Tex., for defendant.

ATWELL, District Judge.

I think we will have to start from taw. The Income Tax law was directed at income. It was not directed against bookkeeping entries either for or against the taxpayer, or, for or against the government.

Several niceties have been presented here by learned counsel, growing out of the practice of each side with reference to this particular gross aggregate and the yearly accruals beginning in the year 1919 and extending through the year 1939, which resulted in the aggregate of the last year.

So far as I have been able to understand from the stipulation of the parties, which I find to be the facts of this case, the taxpayer did not sell the cases, nor the bottles, to its customers, but it did take from those customers commensurate deposits on the bottles and cases so as to save it from waste or loss in the event those bottles or cases, as the case might be, were not returned to it. The time of such return was immaterial. The buyer could substitute other bottles for those bottles, or, if some other person brought in bottles, the taxpayer would take such bottles and use them as against some bottles that were not brought back by the customers. I see nothing in the stipulation that required the taxpayer to put the bottles which it might accumulate from others than its customers, in identical cases that it had sold to some particular customer. I doubt seriously that a pure legal question of bailment could be supported by such facts. Such facts, however, do support the theory that the taxpayer was setting aside and not subjecting itself to income tax liability on this growing sum of money which seems to have been advantaged each year by itself, or certainly was advantaged by itself in the year 1940.

I cannot share, and I do not think the court is required to share, in the thought that the Commissioner, or the Collector, is required to restrict any government taxing right to the investigation of the taxpayer's methods. The very statement of the thought raises such a tremendous duty on the part of the government that it precludes an exhaustive investigation which that duty would require.

The taxpayer did enjoy an advantage in its annual returns by reason of the method that it had adopted and it enjoyed a large advantage ultimately and finally when it put all of those funds you might say, in its pocket, or, rather into its capital fund, showing its determination at that moment whatever the transactions may have been called, to declare the matter settled.

I believe, gentlemen, that it is a safer course, in the confusing circumstances, to deny the taxpayer a recovery here. It certainly ultimately and finally made income. It certainly and finally ought to pay on that income. What I have said includes, of course, the statement that the facts are as stipulated by the parties, and these observations, quite rough, are as a conclusion, or conclusions of law, and you will prepare your judgment, Mr. Reynolds, to be O. K.'d by Mr. Nelson and his associates, as to form, saving such exceptions as they may wish.