## MALETIS v. UNITED STATES.
### Civ. No. 5360.

United States District Court
D. Oregon.
May 18, 1951.

David Fain (Black & Kendall), Portland, Or., for plaintiff.

James P. Garland, Sp. Asst. to Atty. Gen. of United States, and Thomas R. Win-

ter, Sp. Asst. to Chief Counsel, Bureau of Internal Revenue, Seattle, Wash., for defendant.

SOLOMON, District Judge.

Plaintiff brought this action under Title 28, Section 1346(a) (1), U.S.C.A., to recover $65,564.46 of income taxes paid by him for the year 1945, upon the ground that he was entitled to a deduction of $93,205.61 from his gross income for such year as a net operating loss carry-back from the year 1947.

Plaintiff is entitled to prevail if the partnership agreement entered into between plaintiff and his two sons is invalid for income tax purposes. In that event, the loss sustained by the partnership during 1947 would be plaintiff's individual loss and plaintiff would be entitled to a portion of the income taxes he paid on his individual income in 1945 as a net operating loss carry-back.

The validity of this partnership depends upon whether the intention of the parties to enter into a bona fide partnership is the sole test of its validity. Plaintiff and his two sons all testified that, at the time the partnership agreement was executed, each of them had a bona fide intent to form a partnership.[1]

Thereafter, plaintiff and his sons applied for and received from the Treasury Department, as a partnership, a Wine Producer's and Blender's Basic Permit. James, the younger son, as a partner, filed the partnership return of income for the fiscal year ending April 30, 1947, and his older brother, Chris Jr., as a partner, signed 13 of the 39 Alcohol Tax Unit Wine Makers Reports, the partnership return of income for the fiscal year ending April 30, 1946, and other partnership documents. During all this time, they regarded themselves as partners and considered the partnership valid for all purposes.

The Government contends that the validity of a partnership is governed by the intention of the parties, Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659. A partnership in which all of the partners have admitted the proper intent, may not be repudiated after its operations have ceased and its affairs have been settled in order to obtain a tax advantage for one of its partners.

Plaintiff admits that this partnership is valid under Oregon law and that the parties intended to enter into a bona fide partnership agreement. He contends, however, that such intention is insufficient to sustain the validity of a partnership for Federal income tax purposes in the absence of "original capital," "vital services," or the other criteria set forth in the regulations of the Bureau of Internal Revenue or in the opinions of the United States Supreme Court in the Tower,[2] Lusthaus,[3] and Culbertson cases.

The facts relative to the organization and conduct of the partnership are undis-

---

1. Plaintiff, Chris C. Maletis, testified:
   "Q. Did you sign this partnership agreement and have your young sons sign it to deceive the Government? A. I signed it for the purpose of making some money.
   "Q. Did you do it to deceive the Government? A. No; no, I didn't.
   "Q. You honestly entered into an arrangement that you wanted and intended should be carried out? A. Sure.
   "Q. So that it was genuine? A. Yes, it was."
   James Maletis testified:
   "Q. Was there any conversation to indicate this thing was a sham and unreal? A. No. I think my dad and myself and everybody else intended it to be valid."
   Chris C. Maletis Jr. testified:

   "Q. Did you consider this arrangement as a tax-avoidance scheme that you were entering into with your father and your brother so that your father would be able to save Federal income taxes A. No, I didn't.
   "Q. Did you consider when you signed this that it was a bona fide, genuine instrument? A. At the time, yes.
   "Q. And that you were entering into a genuine partnership? A. Yes, sir.
   "Q. And you really and truly intended to do that when you executed the instrument? A. Correct."

2. Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L. Ed. 670.

3. Lusthaus v. Commissioner, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679.

puted. Since 1932, plaintiff has been actively and continuously engaged in the distribution of wines and other beverages. After the outbreak of World War II, the demand of his customers for fruit wines was much greater than his supply. In July, 1943, he purchased the wine manufacturing equipment of the Pommerelle Company for approximately $7,000.00 and took over the lease of the premises formerly occupied by such company. For some time thereafter, he operated on a very small scale.

Although he knew he could not compete indefinitely with the California wine industry, in 1945, he decided to manufacture wine on a large scale, until he was able to satisfy the demands of his customers from the California wine manufacturers.

On April 18, 1945, plaintiff and his two sons entered into a written partnership agreement for the manufacture, distribution, and sale of wines under the name, "Maletis & Sons," the profits therefrom to be distributed and the losses borne in equal proportions. The initial capital of $9,000.-00 was supplied by Alta-Chris, a family partnership consisting of plaintiff and his wife. A portion of the capital was used to pay plaintiff $5,862.74, the depreciated value of the Pommerelle winnery equipment, which equipment, together with the lease, was transferred to the partnership.

At that time, plaintiff's son, Chris Jr., was 21 years of age, in the Army, and stationed away from Portland. His other son, James, was not quite 18 years of age and was attending high school. Neither son had any knowledge or experience in the manufacture or sale of wines and, during the life of the partnership, neither son participated in the business. Their activities were limited to signing documents and an occasional check, all of which were prepared and presented to them for signature by the office manager or accountant for the company.

During the time "Maletis & Sons" operated, both boys were either in the Army or in college and they were dependent upon plaintiff for their support and maintenance. Neither son had any money or credit of his own.

With the exception of the initial capital of $9,000.00 from Alta-Chris, all of the money supplied for the partnership originated with the plaintiff. Shortly after its organization, plaintiff loaned it $20,000.00. Thereafter, the partnership borrowed large sums of money, including one loan of $200,000.00 with which to purchase an inventory of berries. These loans were negotiated and guaranteed by the plaintiff.

In 1947, the partnership sustained a loss of more than $100,000.00, as the result of a sharp drop in the price of berries. This loss was borne by the plaintiff individually.

Plaintiff contends that, if the partnership had been profitable, he could not have successfully sustained its validity in spite of the express intention of the parties, because all of its operations were dominated and controlled by the plaintiff, the only partner who performed vital services or who possessed skill, experience, capital, or credit.

■ Under the evidence introduced in this case, a taxpayer seeking to sustain the validity of a partnership for income tax purposes would probably be unsuccessful before either the Bureau or any court. In such case, the statements of a taxpayer and his sons relative to intent would be self-serving declarations. In order to determine whether the parties had such intent, contributions of "vital services" or "original capital," and the other objective tests of partnership, would certainly be considered in deciding "whether a bona fide intent of the parties to join together as partners" existed.

■ In this case, the statements of intent are not self-serving declarations. They are admissions against interest: admissions of the ultimate fact—the good faith and bona fide intent of the parties. Under such circumstances, there is no need to resort to tests to determine a fact which defendant claims and plaintiff admits to be true.

Counsel for defendant shall prepare Findings of Fact, Conclusions of Law, and a Judgment for the defendant.