**CANADA DRY BOTTLING CO. OF FLOR-IDA, Inc. v. FAHS, Collector of Internal Revenue.**

**Clv. A. No. 1956-J.**

United States District Court
S.D. Florida, Jacksonville Division.

Aug. 9, 1952.

Marshall S. Scott, Loftin, Anderson, Scott, McCarthy & Preston, Miami, Fla., for plaintiff.

Edith House, Asst. U. S. Atty., Jacksonville, Fla., for defendant.

SIMPSON, District Judge.

After due notice, this cause was argued before the Court on final hearing, upon the pleadings and upon the agreed statement of facts filed by the parties April 10, 1952. Leave was granted to the respective parties to file briefs covering the sole question of law involved, viz., whether plaintiff's deliveries of bottles and cases to customers during the tax years involved constitutes *sales* of said articles, or only bailments thereof, with title retained. Briefs have now been filed, and the decision of this question and entry of final judgment are in order. For its findings of fact the Court adopts said agreed statement of facts (filed April 10, 1952) and the same is incorporated herein.

**Agreed Statement of Facts**

It is hereby stipulated by and between the parties hereto, by their respective attorneys, that the following facts shall be taken as true in this case, subject only to the objection of materiality and further provided, that this stipulation shall be without prejudice to the right of either party to introduce other and further evidence not inconsistent with the facts here stipulated as true:

**I.**

Canada Dry Bottling Company of Florida, Inc., hereinafter called taxpayer, was incorporated under the laws of the State of Florida in September of 1939 and its business operations began in November 1939. Taxpayer files its returns on a fiscal year ending September 30th and filed its first return with the defendant for its fiscal year ending September 30, 1940. Its principal place of business is in Tampa, Florida.

**II.**

John L. Fahs, hereinafter called the Collector, is a resident of Duval County, Floriday and is and was at all times material to this action, the Collector of Internal Revenue for the District of Florida maintaining his office in Jacksonville, Florida.

**III.**

(a) The taxpayer is engaged in the business of bottling and selling various soft drink beverages throughout the State of Florida. Its principal products are various beverages identified by the Canada Dry trademark and brand name. Taxpayer has the exclusive right to sell Canada Dry products in the State of Florida under a licensing agreement with Canada Dry Ginger Ale Inc., a Delaware corporation. During the fiscal year ended September 30, 1941, taxpayer was also licensed to distribute Hires Root Beer in thirty-three of the State of Florida's sixty-seven counties. This is not a Canada Dry product. Under both franchise agreements, the grantor furnished taxpayer with the basic syrups which can be purchased only from the grantor. These agreements also gave taxpayer the right to bottle, sell and distribute exclusively within the territories covered carbonated bev-

erages under the respective companies' brand names.

(b) The various soft drink beverages bottled and sold by the taxpayer are placed in glass bottles, which are packaged into case lots of 12 or 24 bottles to a case. All sales by the taxpayer are made at a fixed price per case, the price consisting of a charge for the beverage and a charge for the bottles and cases. These charges are not billed separately. A credit or cash refund is made to anyone, whether the original purchaser or not, who returns to taxpayer, in good condition, empty bottles and cases of the type in which taxpayer bottles its products. However, almost all returns are from the original customer.

(c) During the fiscal year ended September 30, 1941, the following table shows the average cost of new containers from the manufacturers thereof and their return valuation.

|  | Average price paid manufacturer | Return valuation |
|---|---|---|
| Large bottles | .047258 | .05 |
| Small bottles | .025877 | .02 |
| Cases | .213120 | .10 |

(d) Empty bottles and cases returned in good condition are cleaned, refilled and placed in the channels of trade. Not all cases and bottles placed in trade are returned to taxpayer and, therefore, it is necessary to purchase new bottles and cases in order to maintain a constant supply of containers, and also to meet demands of business growth. Attached as Exhibit 1 is a breakdown of the inventory in hands of the trade for the years 1941 through and including 1944 showing opening and closing inventory and the charge-off for nonreturned containers.

(e) During the fiscal year ended September 30, 1941, the bottles in which taxpayer's product was disbursed were of two types: (1) so-called applied color label bottles, (these bottles had the brand name of the product permanently etched into the glass); (2) so-called applied paper labels, (paper labels bearing the product's brand name were glued onto either plain white or green bottles and these labels could be removed by washing the bottles). The applied paper label bottles predominated in this period because the applied color label was a comparatively new development in the bottled beverage field. All bottles were sealed with a metal cap which, in addition to keeping the carbonated gas under compression, also bore the product's distinctive brand name and flavor. The franchise agreements of both Canada Dry and Hires Root Beer provided that the taxpayer would use only bottles which were identified in some distinctive manner as to the grantor's product. The wooden cases in which these bottles were packaged were also marked with the grantor's name and the appropriate trademark.

## IV.

Taxpayer's income tax return for the fiscal year ended September 30, 1941 was filed with the Collector on December 11, 1941. This return reported a taxable net income of $27,264.38 and an income tax of $5,019.75 was paid to the Collector in four installments: $1,229.94 on December 12, 1941 and three installments of $1,263.27 on March 17, 1942, June 18, 1942 and September 17, 1942. The payment made on September 17, 1942, was refunded by a credit on or about October 25, 1946 along with enough of the previous payment to make $1,647.88, the total amount credited. Interest of $386.61 was then refunded.

(a) Taxpayer's original federal income tax returns for its fiscal years of 1940 through and including 1945 were filed upon the assumption that the title to bottles and cases did not pass to its customers. Therefore, taxpayer's inventory of bottles and cases included not only the containers physically present in its various plants, but also an estimated inventory (based on the history of sales and returns) of containers which were out of its possession and in the hands of its customers. Two inventory accounts were maintained, one being plant inventory based upon a physical count of bottles and cases in its various plants and the other an inventory account of bottles and cases in the hands of trade which was estimated (based on history of sales and

returns). In conjunction with the latter inventory there was set up a liability account designated "liability for containers in the hands of customers."

(b) The physical inventory of bottles and cases in the hands of customers was determined by the following process:

(i) As bottles and cases left taxpayer's plants, plant inventory was reduced accordingly and inventory in the hands of customers was increased; while simultaneously the liability account for containers in the hands of customers was increased with that portion of the sales price which represented the charge made for bottles and cases, namely, refund or so-called deposit price.

(ii) If and when bottles and cases were returned to taxpayer's plants, in good condition, the above procedure was reversed; that is, plant inventory was increased, inventory in the hands of customers decreased and the liability account for containers in the hands of customers was reduced by the amount of the refund.

(iii) Over a period of time the liability account and the inventory of bottles and cases in the hands of customers consistently increased and because a large number of bottles and cases were lost, destroyed or appropriated by taxpayer's customers for their own use, these accounts would be grossly inaccurate unless some adjustment was made. Therefore, periodic adjustments were made to these accounts, reducing them by the value of the estimated number of bottles and cases (based on the history of sales and returns) that would never be returned.

(c) Under this method for accounting for containers, inventories were valued at the average cost of bottles and cases from the manufacturers.

### VI.

Waivers extending the Statute of Limitations with regard to the fiscal year ended September 30, 1941 until June 30, 1947 were executed by taxpayer on September 2, 1944 and May 28, 1946 and by the Commissioner of Internal Revenue on September 26, 1944 and June 5, 1946 respectively.

### VII.

Taxpayer's income tax returns for the fiscal years ended September 30, 1940 through and including September 30, 1944 were audited in 1945 and a Revenue Agent's Report dated February 8, 1945 was issued. A true copy of this report is attached to taxpayer's complaint and designated "Exhibit F". This report proposed a deficiency for the years 1940 through and including 1943 and an overassessment for 1944 resulting principally from a readjustment of a reduction which taxpayer had made in its account "liability for containers in the hands of customer", in its 1944 fiscal year return. The Agent proposed to treat this adjustment as having occurred rateably over the years 1940 through and including 1944 rather than in the year 1944.

### VIII.

(a) Taxpayer filed a timely protest to this report and after various conferences with the Agent's office, a Supplemental Revenue Agent's Report dated April 22, 1946 was transmitted to the taxpayer by a letter dated April 30, 1946. A true copy of these documents is attached to taxpayer's Complaint designated "Exhibits G and H".

(b) The Revenue Agent's Report of April 22, 1946 stated that the taxpayer was actually selling the bottles and cases as well as their contents to its customers. Accordingly, in this report, the inventory of containers in the hands of trade was eliminated as well as the liability account for containers in the hands of customers which was restored to taxpayer's taxable income.

(c) Giving effect to the adjustments of this report, the taxpayer's 1941 return was changed as follows:

| | | | |
|---|---|---|---|
| Net Income Per Return | | | $27,264.38 |
| Add Liability for deposits at 9/30/41 | $25,465.88 | | |
| Less Liability for deposits at 9/30/40 | $18,015.46 | | |
| Total | $7,450.42 | | |
| Add inventory of bottles in hands of customers at 9/30/40 | $18,015.46 | | |
| Less inventory of bottles in hands of customers at 9/30/41 | $31,904.72 | $13,889.26 | $ 6,438.84 |
| Corrected net income | | | $20,825.42 |
| Overassessment $1,647.88 | | | |

## IX.

On June 17, 1946, taxpayer executed and forwarded Form 874, a true copy of which is attached to taxpayer's Complaint and designated as "Exhibit I", Waiver of Restrictions on Assessment and Collection and Deficiency in Tax and Assessment of Overassessment, accepting a net deficiency of $15,124.90; this waiver resulted in the assessment of the deficiencies referred to therein by the Commissioner of Internal Revenue, and the scheduling and crediting of overassessments as recognized therein; the net deficiency was thereafter liquidated. The taxpayer then filed a claim for refund as set forth in Paragraph X below and the matter of the correct method of accounting for bottles and containers was thus kept open and further considered by representatives of the Bureau of Internal Revenue over the years.

## X.

(a) On November 25, 1946, while the year 1941 was still open on Waivers of the Statute of Limitations, taxpayer filed with the Collector a claim for refund claiming a refund of $2,966.76 for the fiscal year ended September 30, 1941. A photostat of the retained copy of this refund claim is attached to taxpayer's Complaint and marked "Exhibit C".

(b) The basis of taxpayer's refund claim was that while the RAR of April 22, 1946 was based on the sales method of accounting for container inventories and although the agent had eliminated the inventory of containers in the hands of customers and the liability account, the inventory of containers in the taxpayer's plants was still valued at the average cost of these containers from manufacturers. Taxpayer contended that this inventory consisted of containers which it had repurchased from its customers and should be therefore valued at the repurchase or refund price.

## XI.

(a) In a supplemental RAR dated September 18, 1947 covering the fiscal year 1940 through and including 1946 no change was proposed for the year 1941 but deficiencies for the years ended September 30, 1945 and 1946 were proposed.

(b) All taxpayer's income tax returns beginning the fiscal year September 30, 1946 have been filed upon the basis of accounting for container inventories on the sales and repurchase method.

## XII.

(a) On June 28, 1950 the Internal Revenue Agent in Charge, Jacksonville, Florida forwarded to taxpayer a 90-day letter determining additional tax deficiencies for the year 1942 through and including 1947. Any assessment for the year ended September 30, 1941 was then barred by the Statute of Limitations. A true copy of this letter is attached and marked "Exhibit 2".

(b) The deficiencies set forth in the 90-day letter resulted primarily from the bureau's determination that container inventories should be accounted for on the basis that bottles and cases are not sold to taxpayer's customers which reversed the sales method used in the Supplemental RAR of April 21, 1946.

(c) The letter and statement from the head of the Southern Division, Technical Staff dated July 17, 1950 sets forth the adjustments made to income in the 90-day letter of June 1950. A true copy of this document is attached and marked "Exhibit 3".

## XIII.

On September 21, 1950, taxpayer filed with the Collector an amended claim for refund for its fiscal year ended September 30, 1941. The amended claim does not change the amount of refund claimed and a true copy is attached to taxpayer's Complaint designated "Exhibit D".

## XIV.

On November 22, 1950 taxpayer received a letter from the Commissioner of Internal Revenue denying its refund claims for the fiscal year ended September 30, 1941. A true copy of that letter is attached to taxpayer's Complaint and designated "Exhibit E".

## XV.

If the Court finds that bottles and cases are sold by the taxpayer to its customers, it is agreed that taxpayer's inventory should be valued at the repurchase price and taxpayer is entitled to recover the sum of $2,966.76 plus interest from the date of overpayment of the tax unless the Collector's affirmative defense precludes recovery. However, should the Court find that the title to bottles and cases does not pass from the taxpayer to its customers, the taxpayer is not entitled to recover:

## Conclusions of Law

The Tax Court and the Courts of Appeal for several circuits, as well as a number of state courts of last resort, have uniformly held transactions similar to the ones here involved to constitute sales of various types of containers. A tabulated comparison of some of these cases (taken from page 39 of plaintiff's brief) is set out in the margin [1].

| 1. Name of Case | Type of Business | Type of Container | Government's Contention | Court's Holding |
|---|---|---|---|---|
| Department of Treasury v. Fairmont Glass Works, 113 Ind.App. 684, 49 N.E.2d 1 (Sales Tax) | Glass Bottles and Allied Products | Glass Bottles | Containers Not Sold | Containers Sold |
| Goebel Brewing Co. v. Brown, 306 Mich. 222, 10 N.W.2d 835 (Sales Tax) | Brewery | Glass Bottles & Wooden Cases | Containers Not Sold | Containers Sold |
| LaSalle Portland Cement Co. v. Comm., 4 B.T.A. 438 | Cement Manufacturing | Cloth Sacks | Containers Sold | Containers Sold |
| Appeal of Beadleston & Woerz, Inc. v. Comm., 5 B.T.A. 165 | Brewery | Glass Bottles | Containers Sold | Containers Sold |
| Dewey Portland Cement Co. v. Crooks, D.C., 42 F. 2d 251, affirmed 8 Cir., 57 F.2d 499 | Cement Manufacturing | Cloth Sacks | Containers Sold | Containers Sold |
| Iten Biscuit Co. v. Comm., 25 B.T.A. 870 | Bakery | Tin Boxes | Containers Sold | Containers Sold |
| Buck v. Comm., B.T. A. Memo. Op. P–H 34,570 affirmed 9 Cir., 83 F.2d 627 | Industrial Alcohol | Steel Drums | Containers Sold | Containers Sold |
| Okonite Co. v. Comm., 4 T. C. 618, affirmed 3 Cir., 155 F.2d 248, 249, certiorari denied 329 U.S. 764, 67 S.Ct. 125 | Insulated Wire and Cable | Wooden and Steel Reels | Containers Sold | Containers Sold |
| Ralph Ferguson v. Comm., T. C. Memo. Op. P–H 52,066 (Decided March 1952) | Beer Distributor | Glass Bottles and Wooden Cases | Containers Sold | Containers Sold |

192

Although possibly in the form of dicta, the Supreme Court of Florida in its recent case of Gay, Comptroller, v. Canada Dry Bottling Company of Florida, Inc., etc., Fla., Feb. 8, 1952, opinion on rehearing granted June 24, 1952, 59 So.2d 788, indicated a like conclusion.

Defendant Collector, however, insists that the instant case is covered by Wichita Coca Cola Bottling Co. v. U. S., 5 Cir., 152 F.2d 6, 8 (same case before Judge Atwell below D.C., 61 F.Supp. 407). From a careful examination of the Wichita case, my conclusion is that no true decision of the question here presented was there reached. Judge Sibley's decision is bottomed upon what he terms "the duty of consistency in tax accounting." This same "duty of consistency" had already been imposed upon the Government by Judge Sibley with decisive effect in Eichelberger & Co. v. Commissioner, 5 Cir., 88 F.2d 874. A contrary holding to that reached in the Wichita case would have given the taxpayer there involved an unconscionable advantage. The case was decided the only way it could equitably be decided, regardless of the question of sale versus bailment of the containers.

In the case before me the only party possibly guilty of violation of this duty of consistency is the Government, *not the taxpayer*. For in 1946 the Commissioner assessed deficiencies against this taxpayer (which have been paid) based upon his determination that these identical transactions constituted sales, not mere bailments. Based upon this determination, the taxpayer has since treated the transactions as sales in its tax accounting, and in its returns for subsequent years.

Ruling on the plaintiff's motion to strike the affirmative defense raised in sub-paragraph 1, paragraph Second of the defendant's answer was reserved by this Court's order of January 2, 1952, with the proviso that said portion of defendant's answer would be given only the effect to which the Court considered it legally entitled on final hearing. This affirmative defense is considered by the Court to have no legal effect upon the plaintiff's right to recover in this action.

The plaintiff will be awarded judgment for the amount stipulated to be due, $2,966.-76 (Paragraph 15 agreed statement of facts) with interest from the dates of the respective overpayments involved. Computation of the amount to be recovered may be made by the plaintiff, and, with a proposed form of judgment, submitted by plaintiff's counsel to defendant's counsel for approval and presentation to the Court for entry. If these matters cannot be agreed upon between the parties, they will be settled by the Court upon notice.