IRVING BARTEL AND ELAINE MELMAN BARTEL, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1750–67.   Filed January 14, 1970.

*Charles W. Tuckman* and *Warren Wertheimer*, for the petitioners. *Harry Morton Asch*, for the respondent.

28

OPINION

The petitioners ask us to consider all the circumstances surrounding the disbursements reflected in account No. 36 and to conclude that in fact those regular disbursements in 1954 and 1955 were payments of compensation and that most of the other disbursements were in fact dividends. According to the petitioners' argument, if the disbursements did constitute payments of compensation and dividends, then they would not be taxable as a result of the liquidation of the corporation. The petitioners concede that $15,669 of the disbursements were loans so that they realized that amount on the receipt of account No. 36. On the other hand, the respondent contends that such disbursements were in fact loans to the extent of $54,010. In the alternative, he seeks to invoke a type of estoppel requiring the petitioner to continue to treat the disbursements as loans for purposes of computing his gain on the liquidation of the corporation. Although account No. 36 showed a balance of $94,010 at the time of liquidation, the respondent concedes that $40,000 of such amount is not taxable since it was taxed to the petitioner as a result of the settlement of the case commenced in 1962.

In *Stearns Co.* v. *United States*, 291 U.S. 54 (1934), the Supreme Court applied the estoppel doctrine in a tax dispute. The taxpayer

impliedly waived the running of the statute of limitations, and the Government relied upon that implied waiver. The Court said at page 61:

The applicable principle is fundamental and unquestioned. "He who prevents a thing from being done may not avail himself of the non-performance which he has himself occasioned, for the law says to him in effect 'this is your own act, and therefore you are not damnified.'" * * * Sometimes the resulting disability has been characterized as an estoppel, sometimes as a waiver. The label counts for little. Enough for present purposes that the disability has its roots in a principle more nearly ultimate than either waiver or estoppel, the principle that no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong. * * *

In *Emanuel Hollman*, 38 T.C. 251 (1962), it was held that a taxpayer who had executed waivers extending the running of the statute of limitations was estopped from showing that he lacked the mental capacity to execute such waivers since the Government had relied upon them. In *Crane v. Commissioner*, 68 F. 2d 640 (C.A. 1, 1934), affirming 27 B.T.A. 360 (1932), the estoppel doctrine was applied to a taxpayer who undertook to repudiate his treatment of a transaction as nontaxable. On his tax return, he did not report any income from the transaction, and the court held that such action was in effect a representation that the transaction was nontaxable. The court found that the Government had relied upon this misrepresentation since it had not collected the tax which would have been due if the transaction had been properly reported. See also *Estate of George Kingdom*, 9 T.C. 838 (1947), and *Lloyd H. Faidley*, 8 T.C. 1170 (1947).

In *Orange Securities Corp.* v. *Commissioner*, 131 F. 2d 662 (C.A. 5, 1942), affirming 45 B.T.A. 24 (1941), it was recognized that, in tax cases, the courts are invoking an equitable doctrine like estoppel even though the elements of traditional estoppel are not present. In that case, the court had to determine the basis of notes which had been treated as having no value when they were acquired. The court held that the taxpayer could not show that they had value after the running of the statute of limitations on the year when they were acquired. The court said, 131 F. 2d at 663:

While it is true that income taxes are intended to be settled and paid annually each year standing to itself, and that omissions, mistakes and frauds are generally to be rectified as of the year they occurred, this and other courts have recognized that a taxpayer may not, after taking a position in one year to his advantage and after correction for that year is barred, shift to a contrary position touching the same fact or transaction. When such a fact or transaction is projected in its tax consequences into another year there is a duty of consistency on both the taxpayer and the Commissioner with regard to it, whether or not there be present all the technical elements of an estoppel. * * *

In *Wichita Coca Cola Bottling Co.* v. *United States*, 152 F. 2d 6 (C.A. 5, 1945), affirming 61 F. Supp. 407 (N.D. Tex. 1945), certiorari

denied 327 U.S. 806 (1946), a similar rule was applied. The taxpayer in that case maintained an account to which it credited the deposits received for bottles and cases and to which it debited the refunds of such deposits. When the taxpayer's returns were audited in 1940, the respondent took the position that the increases in such account should be treated as income for each year, and the years 1937, 1938, and 1939 were settled on that basis. The taxpayer then removed the account from its books in 1940, adopting the position that the amount reflected therein should have been treated as income in earlier years. However, the court applied the rule of consistency and held that since the amounts in the account had not been treated as income in the earlier years, the taxpayer could not now change his treatment of them. The duty-of-consistency rule has also been applied in *Continental Oil Co.* v. *Jones*, 177 F. 2d 508 (C.A. 10, 1949), *Johnson* v. *Commissioner*, 162 F. 2d 844 (C.A. 5, 1947), affirming in part 7 T.C. 465 (1946), *Bothwell* v. *Commissioner*, 77 F. 2d 35 (C.A. 10, 1935), affirming 27 B.T.A. 1351 (1933), and *Alamo National Bank of San Antonio, Executor*, 36 B.T.A. 402 (1937), affd. 95 F. 2d 622 (C.A. 5, 1938), certiorari denied 304 U.S. 577 (1938), rehearing denied 304 U.S. 590 (1938). See also *Maletis* v. *United States*, 97 F. Supp. 562 (D. Oreg. 1951), affd. 200 F. 2d 97 (C.A. 9, 1952), certiorari denied 345 U.S. 924 (1953).

The case of *C. H. Wentworth*, 25 T.C. 1210 (1956), affd. 244 F. 2d 874 (C.A. 9, 1957), was very similar to the case before us, and in reaching its decision, the Court was influenced by the belief that the taxpayer should be consistent in his treatment of the transaction. In that case, the stockholder who owned all of the stock of the corporation received a payment from the corporation in 1947, a year with respect to which the statute of limitations had run, and the question was whether such payment should be treated as a dividend or as the repayment of a loan to the corporation. The taxpayer had treated the payment as having no tax consequences on his return for 1947, but in the case, he claimed that it was a dividend. After an examination of all the circumstances, the Court concluded it was the repayment of the loan. In part, the Court's decision was based upon the taxpayer's prior treatment of the transaction.

In the case before us, the disbursements were clearly treated as loans at the times they were made. The petitioner did not reflect them as income on his tax returns or on his personal books and records, and the corporation did not treat them as expenses or dividends on its tax returns or its books and records. Although the petitioner now claims that he was then unaware of this treatment of the disbursements and that such treatment was not in accordance with his intention, he employed a qualified and experienced accountant, who was very familiar with all his affairs, and turned over to him the

responsibility of keeping the petitioner's books and records and preparing his tax returns. That accountant made the returns of both the petitioner and the corporation and supervised the keeping of the books and records of both parties. He also was responsible for the preparation of the petition in the 1962 case in which the disbursements were claimed to be loans. The accountant never varied in his treatment of the disbursements, and since he was the qualified agent of the petitioner to whom the authority and responsibility had been delegated, it seems that the petitioner must accept the responsibility for the acts of his agent. *Tsuneo Otsuki*, 53 T.C. 96 (1969); *D. C. Clarke*, 22 B.T.A. 314, 328 (1931); *M. Rea Gano*, 19 B.T.A. 518, 533 (1930). Thus, despite the petitioner's testimony, we treat the acts of his agent as the acts of the petitioner.

Now the petitioner asks us to look behind the form in which he cast these transactions to ascertain that they were in substance something different. Although they were treated as loans, he wishes us now to examine all the circumstances and conclude that they were in fact the payment of compensation and the distribution of dividends. He agrees that a small portion, one-sixth, of the account may be treated as loans. The effect of accepting his position would be to exempt the rest of the disbursements from taxation at any time—either when they were received, or at the time of the distribution of account No. 36.

The petitioner contends that if we do not accept his position, we are allowing the respondent to circumvent the statute of limitations. This argument presumes that the disbursements should have been taxed in the earlier years and that the respondent's only reason for taking the position that they were loans is so that they will be taxable on the liquidation of the corporation. However, we are not concerned with looking into the respondent's mind to ferret out his subjective purpose. We are concerned with the issue of how to treat account No. 36 on the liquidation of the corporation—does its distribution to the petitioner result in the realization of income? To answer that question, we must determine what account No. 36 reflects—loans or the payment of compensation or dividends. To make that determination, we must look to the events that occurred in the earlier years now closed by the statute of limitations. Thus, to determine the proper tax treatment of the liquidation in 1964, it is our unavoidable duty to examine the circumstances occurring in the earlier closed years.

The respondent would have us determine the nature of those transactions by reference to the manner in which they were treated on the books and records of the petitioner and of the corporation and the manner in which they were treated on the tax returns of both the payor and payee. However, the petitioner would have us reexamine all the circumstances and conclude that the disbursements had been

improperly treated on the books and records and the tax returns. Although the petitioner argues that the respondent is attempting to avoid the effect of the statute of limitations, it seems to us that the petitioner's request, if granted, would constitute more of a frustration of the purposes of the statute of limitations. Such purposes, we understand, are to put to rest controversies with respect to old transactions, when the evidence may be stale and unavailable. The respondent's position asks us to rely upon the objective record, but the petitioner would have us take a new look at all the old evidence. Under these circumstances, it seems that not only the equities but the practical administration of the law argue against granting the petitioner's request, and accordingly, we hold that the disbursements were loans.

The petitioner complains that, although the respondent would apply a duty of consistency to the petitioner, the respondent has not been consistent in his position. In the first place, since the earlier case was settled, and there was no trial on the merits, there is no decision with respect to which collateral estoppel can apply. *United States* v. *International Building Co.*, 345 U.S. 502 (1953). In addition, although it is true that the respondent took the position that the disbursements in 1956 and 1957 represented dividends, it is not necessarily inconsistent for him to contend that the disbursements in the other years were loans—his different position may be justified by differences in the facts in the other years. However, whether or not his positions are inconsistent is not material in this opinion. The respondent is not attempting to collect a tax twice on the same transaction; he is merely contending that the disbursements in some years constitute loans, while in effect admitting that the disbursements in other years were dividends. On the other hand, the petitioner is attempting to use the argument of inconsistency in order to avoid paying any tax on the withdrawals from the corporation.

There are cases in which the courts have refused to apply a duty of consistency, but those cases involve facts different from those in the case before us. In a case such as this, a slight difference in the facts may tip the balance of equities so as to bring about a different result. The petitioner refers to *Arnold A. Schwartz*, 40 T.C. 191 (1963), but in that case, it was the petitioner who was attempting to apply an estoppel doctrine to the respondent to prevent him from revoking an acquiescence in a court decision. The petitioner also referred to *Ross* v. *Commissioner*, 169 F. 2d 483 (C.A. 1, 1948), reversing and remanding a Memorandum Opinion of this Court, but in that case the respondent was fully aware of the facts surrounding the transactions shortly after they occurred and substantially before the running of the statute of limitations. The court reasoned that when the respondent is aware of the true facts, he is not misled. It is said that when both parties know

the facts, there is no reason to estop the taxpayer from changing his position with respect to the transaction. *Commissioner* v. *Mellon*, 184 F. 2d 157 (C.A. 3, 1950), affirming 12 T.C. 90 (1949); *Commissioner* v. *American Light & T. Co.*, 125 F. 2d 365 (C.A. 7, 1942), affirming 42 B.T.A. 1121 (1940); *Manhattan Building Co.*, 27 T.C. 1032 (1957). In another case, the court declined to invoke an estoppel against the taxpayer's changing his position because it was thought that his mistake was wholly innocent. *Bennet* v. *Helvering*, 137 F. 2d 537 (C.A. 2, 1943), reversing a Memorandum Opinion of this Court.

We have considered the cases in which the courts did not require consistency in light of the circumstances before us, but we do not feel that those cases bar the result we reach here. We are of the opinion that the petitioners should continue to treat the advances reflected in account No. 36 as loans, consistent with the manner of their treatment in the earlier years.

*Decision will be entered for the respondent.*