LIBERTY INSURANCE BANK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5070. Promulgated January 18, 1929.

*George M. Morris, Esq.,* for the petitioner.
*Brice Toole, Esq.,* and *J. A. Gerardi, Esq.,* for the respondent.

1432

OPINION.

PHILLIPS: The first allegation of error is that the Commissioner included as taxable income for 1920 an amount of $9,362.36 which was, in fact, earned in previous years. The respondent concedes that such an error was made and that taxable income for 1920 was overstated by that amount.

A second group of errors assigned arises out of recoveries made in the taxable years from debts previously charged off. During 1920 the petitioner made recoveries on items previously charged off as follows:

| | | |
|---|---|---|
| (1) | Knadler & Lucas | $2,100.00 |
| (2) | Louisville Brick Co | 2,120.00 |
| (3) | Louisville College of Dentistry | 212.20 |
| (4) | American Standard Asphalt Co | 4,160.00 |
| (5) | Highland Park Bank | 150.92 |
| (6) | Fred G. Jones Lumber Co | 7,500.00 |

In 1921 it made such recoveries as follows:

| | |
|---|---|
| Louisville Brick Co | 1,636.92 |
| Highland Park Bank | 30.19 |

The Commissioner included the amount of such recoveries as income for the respective years. The respondent conceded that the amount recovered from the American Standard Asphalt Co. in 1920 was not income, leaving for determination the question whether the balance of the recoveries should be included in computing income.

The evidence shows that petitioner's vice president had charge of its loan department and that it was his practice to charge off all overdue accounts, as soon as they became past due. From the record it appears that the debts in question were not worthless when they were charged off, nor had there been any ascertainment of worthlessness. Prior to 1921 there was no provision for charging off a debt which was worthless in part. The statute is specific in the statement that debts are to be deducted in the year when ascertained to be worthless. No option is allowed to deduct them at any other time. In such circumstances no deduction could properly be claimed or allowed in these earlier years. *Greenville Textile Supply Co.*, 1 B. T. A. 152; *Steele Cotton Mill Co.*, 1 B. T. A. 299; *First National Bank of Durant, Okla.*, 6 B. T. A. 545; *Houck Co., Ltd.*, 7 B. T. A. 670.

This case does not fall within the regulation of the Commissioner that where debts have been ascertained to be worthless and charged off, any collection is to be included in income, and we are not called upon to discuss the soundness of that regulation. Here there was no ascertainment of worthlessness and consequently no proper deduction in the former year.

There is no charge and no evidence that there was any fraud or misrepresentation in connection with the deductions claimed in the earlier years. The mistakes made in claiming and allowing the deductions for prior years may not be corrected by including the amounts collected as income in the year of collection. The proper remedy is to adjust the tax for such prior years. It is suggested that the period within which any additional taxes for such prior years may be assessed has expired. With respect to the situation created by the expiration of the statutory period, we said in *Macmillan Company*, 4 B. T. A. 251:

\* \* \* We can not concede, however, that the filing of amended returns, showing correct computations of net income for prior years, can be made a condition to correct determination of a taxpayer's liability for income and profits taxes for subsequent years. The fact that a taxpayer has paid lower taxes for prior years than those which were rightfully due, because of erroneous computations of taxable income, and that the statute of limitations now bars the assessment and collection of any deficiency for those years, does not justify any erroneous computation of its tax liability for any subsequent year. *Appeal of Goodell-Pratt Co.*, 3 B. T. A. 30. Income and profits taxes are levied with respect to annual periods, and each annual period must necessarily stand by itself. *Appeal of Atkins Lumber Co.*, 1 B. T. A. 317.

We are of the opinion that the Commissioner was in error in adding to taxable income the amount received in 1920 and 1921 from the above mentioned accounts.

The petitioner further contended that its invested capital for 1920 has been improperly reduced by $33,746, being the amount of certain debts erroneously written off in prior years as follows:

| | | |
|---|---|---|
| (1) Knadler & Lucas | | $2,100.00 |
| (2) Louisville Brick Co | | 5,374.02 |
| (3) Louisville College of Dentistry | | 14,930.00 |
| (4) American Standard Asphalt Co | | 4,160.00 |
| (5) Highland Park Bank | | 226.38 |
| (6) Fred G. Jones Lumber Co | | 7,500.00 |
| (7) International Traction Co | | 3,000.00 |
| (8) S. Lilienthal | | 1,455.60 |

The respondent admits error in reducing invested capital by the items identified above as (4), (7), and (8). The remaining items are those which we have discussed above. They had not been ascertained to be worthless prior to the taxable year involved and were therefore improperly excluded from the computation of invested capital. For 1921 the Commissioner reduced invested capital by

$19,502.88 on account of some of these same items. For the reasons given above such reduction was erroneous.

It is alleged that the Commissioner erred in refusing to allow as deductions expenditures of $5,497 and $6,125.96 in the years 1920 and 1921, respectively, for savings banks which were used as advertising novelties. These were in the form of miniatures of the Liberty Bell.

The evidence shows that the "Liberty Bell Banks" were distributed by petitioner for three purposes; to obtain new depositors, to advertise petitioner's business and name, and to stimulate and encourage thrift in the community. Solicitors were engaged to call from house to house and offer a bank to those who opened new accounts with petitioner. Advertisements depicting the banks and offering to give them to new depositors were displayed in newspapers. These banks could not be opened unless they were brought to petitioner's place of business or unless they were forcibly broken open. A supply of these banks was on hand at the close of each of the years involved and, as no record of their number was kept, it is not possible to determine the cost of those distributed. On this basis alone it might be necessary to approve the Commissioner, but we prefer to rest our decision on a broader ground. In several cases we have pointed out that expenditures for advertising and promotion may create or increase the value of an asset in the nature of a trade name or good will. We have pointed out that in such cases it would be proper to capitalize that portion of such expenditures that can properly be said to be directed toward such an object. *Northwestern Yeast Co.*, 5 B. T. A. 232; *Richmond Hosiery Mills*, 6 B. T. A. 1247; affd. 29 Fed. (2d) 262. The difficulty is a practical one in determining what portion represents a current expense of the business of the year and what portion is properly to be attributed to future years. We are satisfied that in the instant case the usefulness of these banks as an advertisement for the petitioner did not cease with the taxable year. The Commissioner has allowed 25 per cent of their cost to be written off each year until the whole is recovered. There is nothing which would lead us to believe that this is not a proper period over which to distribute the cost of these banks.

The remaining contention of petitioner is that debts of the Kentucky Wagon Manufacturing Co. and the Wolke Lead Batteries Co. were recoverable only in part in 1921 and that a deduction should be allowed. The Revenue Act of 1921 provided in section 234(a) that there should be allowed as deductions:

(5) Debts ascertained to be worthless and charged off during the taxable year (or in the discretion of the Commissioner a reasonable addition to a reserve for bad debts); and when satisfied that a debt is recoverable only in part the Commissioner may allow such debt to be charged off in part.

The revenue acts prior to that of 1921 had allowed as deductions only " debts ascertained to be worthless and charged off during the taxable year." Under such prior acts no deductions were allowed for reserves for debts which were worthless in part. It was only when the debt was ascertained to be wholly worthless that a deduction could be allowed. We must assume that Congress did not intend that a deduction should be allowed for a part of a debt, in the year in which it became worthless in part, and for the whole debt when it was ascertained to be wholly worthless and charged off. A literal construction of the statute might lead to that result. The proper interpretation would seem to be that the partial indebtedness must be ascertained and the amount charged off during the taxable year. In other words, the amount charged off is to be allowed as a deduction if, in fact, the charge-off is justified by an ascertainment that the debt is worthless to the extent written off. This is the interpretation placed upon the statute by regulations and in effect accepted by Congress by reenacting the section without change in subsequent acts. We are, therefore, of the opinion that it is incumbent upon the petitioner to establish not only that the debts were worthless in part, but that they were charged off.

The evidence shows that at the beginning of the taxable year petitioner had on its books an account known as " Contingent Fund for Losses " in which there was a credit of $20,000. On July 30, 1921, this was increased by $30,000 and on December 31, 1921, by $45,000, making a balance of $95,000 in this account at the close of 1921. These increased amounts were charged into the undivided profits account. The effect was to set aside a part of the undivided profits as a contingent fund to cover prospective losses. The testimony is that the official who directed these entries had in mind the anticipated loss on the two accounts in question. On the balance sheet of the petitioner, the amount of this account was deducted from its securities, although there had been no loss from this source. No deduction was claimed in preparing petitioner's income-tax return. The reserve so set up was available for the purpose of meeting any loss which might be sustained.

Furthermore, it appears that when the notes of the Kentucky Wagon Manufacturing Co. were later determined to be worthless they were charged directly into the undivided profits account, and not into this reserve fund, although this reserve was at the same time decreased in amount by charging a part of it back into undivided profits. All the circumstances considered, we are of the opinion that the debts in question were not charged off in part and that the deduction now claimed can not be allowed.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

MARQUETTE did not participate.

SMITH, dissenting: Under a taxing statute the ascertainment of the worthlessness of a debt must be by the taxpayer. *United States* v. *Frost*, Federal Case 15172. If there has been an ascertainment of worthlessness by the taxpayer and that has been made in good faith the respondent may not disallow the deduction. In its income-tax returns in years prior to the taxable years the petitioner filed returns in which it deducted from gross income debts which it alleged had been ascertained by it to be worthless. In the audit of such returns the respondent allowed the deductions to stand. In my view of the case the taxpayer is now estopped to deny that the debts were ascertained to be worthless in the years for which they were claimed as deductions from gross income.

---

ARUNDELL, dissenting: I can not agree with the treatment in the prevailing opinion of the amounts charged off as bad debts and allowed as deductions in the years prior to 1920 and 1921 and on which there were recoveries in the taxable years. While, as stated in the *Macmillan Company* decision, "income and profits taxes are levied with respect to annual periods, and each annual period must necessarily stand by itself," it does not follow that in determining the tax liability of the current year that the course of conduct of a taxpayer during past years in his dealings with the United States should be entirely disregarded. The limitation on the making of additional assessments for the years 1916 to 1919, inclusive, has admittedly expired, but petitioner seeks to retain the benefit of its own acts and at the same time avoid the consequences thereof. The respondent under such circumstances invokes the doctrine of estoppel and it would seem that the necessary elements of an estoppel are here present. That this doctrine has been recognized in tax cases may be seen from an examination of the case of *McDonald Coal Co.* v. *Heiner*, 9 Fed. (2d) 992.

The petitioner herein had not ascertained the accounts to be worthless but represented to the respondent that it had. With respect to at least some of the items petitioner knew, or at any rate had abundant reason to believe, that they were not worthless. For instance, in the case of the Louisville Brick Co. item petitioner obtained within the year new notes given by the president of the company and secured by mortgages. As to the notes of W. E. Grant and the Louisville College of Dentistry, petitioner held a mortgage against the indebtedness of the college, and so it must have known that the college had some property to which it could look for payment.

The Commissioner is not chargeable with knowledge of the facts pertaining to the financial condition of petitioner's debtors and no duty is imposed upon him by law to acquaint himself with the

facts. It is the intention of the statute that returns shall be honestly made and if the Commissioner so desires he may rely on the statements made in them. If it were otherwise the Commissioner would be obliged to examine with suspicion every return filed and be required to make an independent investigation of every fact stated despite the oath of the taxpayer. It was stipulated by the parties that the " returns for 1916, 1917, 1918, and 1919 were examined and audited by the respondent," and petitioner quotes this in its argument against the working of an estoppel. How far the examination and audit went is not shown, but it is unbelievable that these deductions would have been allowed if the facts as now asserted by petitioner had been made known to the respondent.

It is to be remembered that the real party in interest is not the Commissioner of Internal Revenue but the United States, and that the petitioner by taking the deduction for bad debts was benefited by reductions of its taxes which it would not have received but for its erroneous claims, and the United States was correspondingly damaged. The petitioner argues that it was mathematically impossible for the United States to have suffered any pecuniary prejudice on account of the deductions taken for 1919 because in that year petitioner had a net loss of approximately $16,000 and the bad debt deductions amounted to but $7,801.81. In making this argument petitioner fails to take into account the net loss provision of the statute under which a taxpayer obtains the benefit of a net loss as a deduction against income of another year. It is, therefore, my opinion that the position of the respondent is well taken and that petitioner is estopped to now say that he erred in taking the deductions claimed in 1916, 1917, 1918, and 1919. If I am correct in this view, it follows that invested capital can not now be increased because of the claim that the deductions were erroneously taken. In other words, the petitioner must abide by its acts, which acts were the cause of the reduction in invested capital.

Finally, as to the inclusion in income of the amounts recovered in 1920 and 1921. If my view of the application of the doctrine of estoppel is correct, the result is the same as if the deductions taken for bad debts were proper deductions, and consequently any recoveries in subsequent years constitute income. *Nott-Atwater Co.* v. *Poe*, — Fed. (2d) — (Dist. Ct., W. Dist. Wash., Oct. 10, 1928). Cf. *Chicago, Rock Island & Pacific Ry. Co.*, 13 B. T. A. 988.

TRUSSELL agrees with this dissent.