ASKIN & MARINE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10657.    Promulgated June 13, 1932.

*Charles D. Hamel, Esq., Benjamin H. Saunders, Esq.*, and *Arnold Markel, C. P. A.*, for the petitioner.
*C. H. Curl, Esq.*, for the respondent.

OPINION.

ARUNDELL: The respondent has determined that the sum taken from petitioner's active card file at the close of 1920 did not represent debts ascertained to be worthless and has disallowed that amount as a deduction. Petitioner alleges that this was error on the part of the respondent and claims that the total of the sum in its delinquent file plus the additional sum taken from its active cards in 1920 represented the total of its worthless accounts for that year.

The evidence fully justifies respondent's disallowance as a bad debt deduction of that portion of the amount claimed which was taken from petitioner's active file for the year 1920. It is established clearly that no effort was made to ascertain the worthlessness of the the amounts written off from the active cards. The proof was so clear that counsel for petitioner in his brief says, "On the evidence the respondent is apparently correct as to 1920." We accordingly sustain the respondent's disallowance of $279,240.68 as a bad debt deduction for 1920.

The next question, raised in the alternative by petitioner, is whether the amount recovered in 1920 on similar items charged off for 1919 should be included in 1920 income. The same question was involved in *Commissioner* v. *Liberty Bank & Trust Co.*, 59 Fed. (2d) 320; reversing 14 B. T. A. 1428. The close similarity of the two cases is apparent from the following quotation from the opinion of the court:

> In its returns for 1916 to 1919, inclusive, the taxpayer charged off and reported as worthless certain debts owing to it. Due allowances were made for these debts by the Commissioner in the assessment of taxes for those years. Upon the payment of the debts in whole or in part in 1920 and 1921, the Commissioner treated the amounts received as a part of gross income. The Board of Tax Appeals reversed this ruling, holding, to which there were dissents, that these payments were not a part of gross income for the years received because they were not in fact ascertained to be worthless for the years for which they were so reported and charged off.

In that case, as in this, the contention of the respondent was that the taxpayer, having asserted that the debts were ascertained to be worthless and charged off, and having received the benefit of such assertion, was estopped to deny its truth to the prejudice of the Government. The taxpayer contended, and the same contention is made here, that there was no basis for the application of the doctrine of estoppel. On this phase of the case the court held:

> It is said that it was the duty of the Commissioner, before allowing the deductions in the former years, to exercise reasonable diligence to discover whether the debts were worthless, and if he had done so, he could have ascertained that they were not. While it may be conceded that the Commissioner may not blindly accept every statement which a taxpayer makes as to a fact, and by acting thereon preclude the taxpayer from showing at some other time that the statement was mistakenly made, we cannot assent to the view that a taxpayer which has been allowed a deduction for a debt, on its statement under oath that the debt has been ascertained to be worthless, is not estopped thereafter from denying the truth of the statement to the prejudice of the Government. The Commissioner of necessity does and must rely largely upon the representations of the taxpayer, and in order to estop the taxpayer from assuming a contrary position he is not compelled to look with suspicion upon all such representations and himself examine or cause to be examined the financial condition of all the taxpayer's debtors. It is the duty of the

taxpayer to deal fairly and truthfully with the Government. The taxpayer was in a better position to ascertain the facts in this case than the Government, and it cannot now say that the Government, by the exercise of reasonable care, ought to have done what it failed to do. The officers of the Government charged with the duty of assessing and collecting taxes have the right to assume that a taxpayer will do his duty, and we think it is to be presumed from the fact that these deductions were allowed for the years in which they were claimed that the Commissioner relied upon the taxpayer's sworn statements that the debts were worthless. It is also to be presumed, in the absence of evidence to the contrary, that the Government was prejudiced by such reliance, for it is obvious that a deduction from gross income reduces the net income subject to taxation. The purpose which the statute has in view in authorizing deductions for bad debts is to permit the taxpayer to reduce his taxable income. It is fair to infer from the fact that deductions were claimed and allowed for these debts in former years, nothing else appearing, that there was a consequent reduction in taxable income.

In the case before us the respondent has a stronger ground for invoking estoppel against a taxpayer than he had in the *Liberty Bank* case, for in this case, as set out in our findings of fact, the taxpayer insisted over a period of years that the deduction claimed represented debts actually ascertained to be worthless. By reason of its representations made at conferences and affidavits filed with the respondent, petitioner was able to convince the respondent of the verity of its claims and obtained the benefit of the deductions of gross income for which it asked.

In *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359, the principle was laid down that recoveries on losses previously claimed and allowed constitute income. That decision, it is pointed out in the *Liberty Bank* case, is controlling in the case of recoveries on debts for which deductions had been claimed and allowed, and accords with the respondent's long established interpretation of the revenue acts. See art. 110, Regulations 33; art. 52, Regulations 45; art. 51, Regulations 62.

In view of the foregoing, we are of the opinion that respondent properly included in income for 1920 the collections in that year on the accounts making up the amount claimed and allowed as a bad debt deduction for 1919.

On the invested capital question, petitioner alleges that the accounts making up the amount of $308,504.35 collected in 1920 were good accounts receivable and as such should be included in invested capital. As we have held that the 1920 collections constitute income, it necessarily follows that the same items can not at the same time be invested capital.

Reviewed by the Board.

*Decision will be entered for the respondent.*

TRAMMELL dissents.

MURDOCK, concurring: I do not agree that the amount collected in 1920 on accounts charged off for prior years should be included in 1920 income because of an estoppel. An estoppel must be certain and may not depend upon argument or inference. It is a matter of defense and should be pleaded and proven by the one asserting it. This same party should suffer if the proof is inadequate. In order to work an estoppel of this kind there must be, among other things, (1) conduct, acts, language or silence amounting to a representation or a concealment of material facts; (2) the truth concerning these facts must be unknown to the other party, who claims the benefit of the estoppel, and this party must be without convenient or ready means of acquiring this knowledge by the exercise of reasonable diligence; (3) the latter must also be led by his reliance on the conduct of the other to change his position for the worse. An estoppel has no application where the material facts are known to both parties. The object of the rule is to repress fraud and render men truthful in their dealings with each other.

The Commissioner was investigating the tax liability of this taxpayer for four years, the years 1917 to 1920, inclusive. The information which he obtained from the taxpayer showed that the latter pursued a consistent course in all of those years so far as the matter now under discussion is concerned. There is nothing in the record to distinguish the facts for 1920 from those for the other years. The Commissioner knew that in each year the petitioner deducted a certain amount from its income which it considered a fair amount, in the light of its experience, to represent bad debts; it next absorbed this amount by charge-offs in specific accounts, first wiping out all delinquent accounts and then spreading the remainder among the active accounts; as amounts thus charged off were collected in later years, the collections were again included in income. These are the material facts. Both parties knew them. What other fact was represented or concealed which could work an estoppel? The petitioner contended that it had thus met the requirements of the act as to ascertainment of worthlessness and charge off in all years. The prevailing opinion holds that having taken this position he is estopped to take another. But this contention of the taxpayer was no more than a statement of a conclusion. The prevailing opinion seems to hold that the Commissioner may say to this taxpayer, " You have persuaded me to allow you deductions for prior years, so I include certain items in your 1920 income regardless of whether or not they are properly income for 1920 and you may not show or even contend that they are not income for that year." This would make the unequal resistance of the Commissioner to one argument on similar facts for four years the basis of an estoppel. The Commissioner is able to form his own conclusions from a given state of facts and can not claim an estoppel where another's argument made

him vacillate. The difficulty does not arise from any unfair advantage taken by the petitioner.

The Commissioner singled out the year 1920 and disallowed a part of the deduction for that year. We approve his action as to that year. Why he did not follow his agent's report, disallow similar parts of the deductions for other years and exclude the collections from income, I do not know. If it was on account " of the additional information submitted in conference of September 16, 1922," what was that information? Apparently without any further information the Commissioner eventually proposed the large deficiency for 1920 by disallowing the excess of the bad debt deduction over the total of the delinquent accounts as an arbitrary deduction. In this connection he pointed to collections in the succeeding year, but he had the same information for 1917, 1918 and 1919.

The taxpayer says, " If you will not adopt my consistent method, then take another consistent view, that of your revenue agent for example, whereby my income for 1920 will not be distorted." He is not estopped to make this plea. We should not support the Commissioner if these items were not income in 1920. Errors of other years need not concern us under such circumstances, for the Commissioner has not shown that any material fact was unknown to him or misrepresented when he made his determination as to those years or when his determination became final.

The Commissioner determined that proper amounts were charged off for prior years. The presumption is that he was correct. The proof does not show that the amount charged off was incorrect in the light of the circumstances known at the end of each of those years. Amounts later collected were then unknown. In my opinion the Commissioner wins the point without benefit of an estoppel.

GOODRICH agrees with this concurring opinion.