JOSEPH KAHN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

HARRY KAHN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 82860, 82861. Promulgated December 16, 1938.

*Llewellyn A. Luce, Esq.*, for the petitioners.
*Frank B. Schlosser, Esq.*, for the respondent.

OPINION.

Van Fossan: The first issue involves the familiar problem of deductions for worthless debts. There is no controversy as to their actual charge-off or as to the fact that a determination was made by the petitioners that the debts were worthless.

The facts, however, present an unusual situation. There is no proof or suggestion that the debtors were insolvent, that they were unwilling to pay their obligation or that they were in financial difficulty. The unusual factor is the undisputed fact that circumstances wholly beyond the debtors' control delayed the payment of the accounts beyond the end of the taxable year.

The statute allows a deduction of debts ascertained to be worthless and charged off in the taxable year. But such an ascertainment and charge-off does not close the matter to review. When the question arises before the Board the taxpayer must prove the fact of worthlessness. The evidence must be such as reasonably to convince the Board that the accounts were in fact worthless. Worthlessness is not established by a showing that payment has been delayed a few months and may suffer further postponement. It matters not that the delay is due to conditions beyond the control of the debtor. Nor is it established generally without proof, direct or implied, of a distressed financial status on the part of the debtor. Here the

proof establishes nothing as to the financial condition of the debtors. For aught that appears, they were ready and willing to pay. Likewise, there appears no reason why payment could not have been made to petitioner's agents in the several countries. The difficulty was solely one of transmission of currency out of the countries. In this situation we can not hold that the debts were worthless. Their collection was delayed by the embargoes but the accounts were not worthless. See *Richards & Hirschfeld, Inc.*, 24 B. T. A. 1289. Corroboration of this conclusion is seen in the fact that soon after the embargoes were lifted the accounts were paid. The Commissioner's action is approved.

Under the second issue, the petitioners claim additional deductions for entertainment expenses. We note that the respondent has allowed one-half of the amounts claimed by each petitioner, thus recognizing the basis of the deduction but not approving the amount. There appears to be no question as to the fact that the amounts were actually spent. The amounts claimed do not seem unreasonable when compared with gross sales of over $1,300,000.

The only factor in the situation that would possibly prevent the allowance is the failure of the petitioners to keep an accurate account of the money so spent. Both petitioners and respondent rely on *Cohan* v. *Commissioner*, 39 Fed. (2d) 540 (C. C. A., 2d Cir.). In that case the court said:

In the production of his plays Cohan was obliged to be free-handed in entertaining actors, employees, and, as he naively adds, dramatic critics. He had also to travel much, at times with his attorney. These expenses amounted to substantial sums, but he kept no account and probably could not have done so. At the trial before the Board he estimated that he had spent eleven thousand dollars in this fashion during the first six months of 1921, twenty-two thousand dollars, between July first, 1921, and June thirtieth, 1922, and as much for his following fiscal year, fifty-five thousand dollars in all. The Board refused to allow him any part of this, on the ground that it was impossible to tell how much he had in fact spent, in the absence of any items or details. The question is how far this refusal is justified, in view of the finding that he had spent much and that the sums were allowable expenses. Absolute certainty in such matters is usually impossible and is not necessary; the Board should make as close an approximation as it can, bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making. But to allow nothing at all appears to us inconsistent with saying that something was spent. True, we do not know how many trips Cohan made, nor how large his entertainments were; yet there was obviously some basis for computation, if necessary by drawing upon the Board's personal estimates of the minimum of such expenses. The amount may be trivial and unsatisfactory, but there was basis for some allowance, and it was wrong to refuse any, even though it were the traveling expenses of a single trip. It is not fatal that the result will inevitably be speculative; many important decisions must be such. We think that the Board was in error as to this and must reconsider the evidence.

We have adopted the above principles and have applied them in many cases. *A. F. Rees*, 21 B. T. A. 698; *R. P. Shea*, 24 B. T. A. 798; *Julia Dahl et al., Executors*, 24 B. T. A. 1167; *Mitten Management, Inc.*, 29 B. T. A. 569. The record convinces us that the amounts claimed were actually spent for the purpose stated. Under the authority of the foregoing cases the deductions are allowed.

Pursuant to the stipulation, petitioner Joseph Kahn is allowed an additional capital loss of $2,774.75.

*Decisions will be entered under Rule 50.*