HUGHES AND LUCE, L.L.P., ALAN J. BOGDANOW, TAX MATTERS PARTNER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hughes & Luce, L.L.P. v. Commissioner
Docket No. 17904-93
United States Tax Court
T.C. Memo 1994-559; 1994 Tax Ct. Memo LEXIS 564; 68 T.C.M. (CCH) 1169; 68 Trade Cas. (CCH) P1169; November 3, 1994, Filed *564 Decision will be entered for respondent. H, a cash method partnership that provides legal services, has always deducted from taxable income its payment of reimbursable client expenses. Following an audit of H's 1989 Form 1065, U.S. Partnership Return of Income, R recharacterized these payments as nondeductible loans and increased H's 1989 taxable income by $ 422,457 in order to reflect the amount of these payments that H had deducted in taxable years before 1989, and for which H was reimbursed in 1989. H concedes the correctness of R's recharacterization of the payments as loans, but disputes R's attempt to increase its 1989 taxable income. Held: The Court will not reconsider its position on the erroneous deduction exception to the tax benefit rule. Held, further, the doctrine of quasi-estoppel negates the erroneous deduction exception so that H must include the $ 422,457 in its 1989 taxable income. For petitioner: Vester T. Hughes, Jr. and J. Gregory Taylor. For respondent: John S. Repsis. LARO
LARO
MEMORANDUM FINDINGS OF FACT AND OPINION LARO, Judge: Alan J. Bogdanow (petitioner), tax matters partner of Hughes & Luce, L.L.P. (Hughes), petitioned the Court on *565 August 19, 1993, to readjust respondent's $ 422,457 adjustment to Hughes' 1989 taxable income. Respondent's adjustment is reflected in a notice of final partnership administrative adjustment issued to Hughes on June 1, 1993. Respondent's adjustment stems from her recharacterization of Hughes' payment of reimbursable client expenses from deductible expenses to nondeductible loans. Following petitioner's concession that respondent's recharacterization is correct, we must decide the following issues: 1. Whether the Court will reconsider its position on the erroneous deduction exception to the tax benefit rule. We hold that the Court will not. 2. Whether the doctrine of quasi-estoppel requires Hughes to include in its 1989 taxable income its receipt during 1989 of $ 422,457 in reimbursements for these previously deducted client expenses. We hold that the doctrine does. [1]
*566 FINDINGS OF FACT Most of the facts have been stipulated and are so found. The stipulations and exhibits submitted therewith are incorporated herein by this reference. Hughes is a general partnership that was organized on November 1, 1976, under the laws of the State of Texas. When the petition was filed, Hughes' principal place of business was Dallas, Texas. Hughes is a full-service civil law firm that uses the cash receipts and disbursements method of accounting for Federal income tax purposes and reports its income and expenses on a calendar year basis. With respect to the taxable year in issue, Hughes timely filed a 1989 Form 1065, U.S. Partnership Return of Income. Hughes has many clients, and its terms of engagement differ from client to client. Hughes' billing arrangements for its services include hourly fees, fixed fees per project, contingent fees, value-based fees, and a combination of the above. Hughes also bills clients separately for out-of-pocket costs paid to third parties for expenses incurred during its representation of them. These out-of-pocket costs include expenses for travel and meals, court costs, filing fees, expert fees and costs, corporate service *567 charges, third-party photocopy services, deposition costs, long-distance telephone charges, and delivery services (hereinafter, these out-of-pocket costs are collectively referred to as Service Costs). Hughes may or may not enter into written client agreements providing that its clients must reimburse it for the payment of Service Costs. Absent a written agreement, Hughes has no assurance that it will receive reimbursement for any payment of Service Costs. Even with written agreements, Hughes has no assurance that it will receive reimbursement for its payment of Service Costs because some clients may not honor the agreements. For all of its taxable years before and including 1989, Hughes consistently deducted Service Costs as ordinary and necessary business expenses when paid, and it consistently included reimbursements of Service Costs in its ordinary income for the year of receipt. Hughes' reporting of Service Costs for tax purposes was the same as for financial accounting purposes, and it corresponded to Hughes' understanding of the manner in which other similarly situated law firms treated their Service Costs. As of December 31, 1988, Hughes had deducted Service Costs of *568 $ 490,766 for which it had yet to be reimbursed. During 1989, Hughes paid and deducted $ 2,367,535 in Service Costs, and included in its income $ 2,398,825 of Service Costs that were reimbursed during that year. Of the amount reimbursed, $ 1,908,509 was for Service Costs paid and deducted in 1989 and $ 490,766 was for Service Costs paid and deducted in taxable years before 1989. [2]
On March 30, 1992, respondent began an audit of Hughes' 1989 Form 1065. [3] This date was the first time that respondent had audited Hughes' books and records for any taxable year. On page 1 of its 1989 Form 1065, Hughes included a deduction for Service Costs on line 19, "Other Deductions (attach *569 schedule)", and referenced the attached schedule that detailed the types and amounts of these other deductions. The schedule showed 20 categories of expenses, by type and amount, that totaled the $ 3,788,034 amount shown as Other Deductions on page 1. The amounts in 2 of the 20 categories included a substantial portion of Hughes' payments of Service Costs and its receipts of reimbursements therefor. These two categories, labeled "OTHER REBILLABLE EXPENSES" and "REIMBURSEMENTS FROM CLIENTS", showed expenditures of $ 1,651,941 and reimbursements of $ 4,627,806, respectively. The $ 4,627,806 amount shown as reimbursements was shown on the schedule as a negative number. This number was the only "negative expenditure" included in the 20 categories. [4]
*570 Respondent determined that Hughes' Service Costs were loans and adjusted Hughes' 1989 taxable income to reflect this determination. Respondent's adjustment, which was reflected in her Notice of Final Partnership Administrative Adjustment, was as follows: Service Costs deducted
but not reimbursed on
December 31, 1988
$ 490,766 Service Costs deducted
in 1989
$ 2,367,535 Service Costs reimbursed
in 1989
(2,398,825)
(31,290)
Less: Bad debt deduction [5]
(37,019)
Adjustment to Hughes
taxable income for 1989
$ 422,457 OPINION Petitioner has conceded the correctness of respondent's determination that the Service Costs must be treated as loans to clients that create neither deductions when paid nor income when reimbursed. The dispute between the parties centers on whether Hughes' 1989 taxable income includes $ 422,457 that Hughes received during 1989 as reimbursement *571 for Service Costs which Hughes deducted for its pre-1989 taxable years. Respondent argues that Hughes must include this amount in its income under the tax benefit rule. Petitioner counters that the tax benefit rule is inapplicable because Hughes' deductions of Service Costs were improper. Respondent replies that the doctrine of quasi-estoppel precludes petitioner from alleging that Hughes' deductions were improper. The tax-benefit rule includes an amount in current income to the extent that: (1) The amount was properly deducted in a year prior to the current year, (2) the deduction resulted in a tax benefit, (3) an event occurs in the current year that is fundamentally inconsistent with the premises on which the deduction was originally based, and (4) a nonrecognition provision of the Internal Revenue Code does not prevent the inclusion in gross income. Hillsboro Natl. Bank v. Commissioner, 460 U.S. 370, 383-384 (1983); Frederick v. Commissioner, 101 T.C. 35, 41 (1993). A current event is fundamentally inconsistent with the premises on which the deduction was originally based when that event would have prevented the *572 deduction if the event had occurred in the year of the deduction. Hillsboro Natl. Bank v. Commissioner, supra at 383-384; Frederick v. Commissioner, supra at 41. Our decisions apply the tax benefit rule only when the original deduction was proper. We do not apply the tax benefit rule to increase a taxpayer's current income by the amount of a deduction that was taken improperly in a year that is now closed by the period of limitations. Southern Pac. Transp. Co. v. Commissioner, 75 T.C. 497, 559 (1980); Unvert v. Commissioner, 72 T.C. 807 (1979), affd. on other grounds 656 F.2d 483 (9th Cir. 1981); Mayfair Minerals, Inc. v. Commissioner, 56 T.C. 82, 87-88 (1971), affd. 456 F.2d 622 (5th Cir. 1972). The period of limitations, as previously stated by this Court, "requires eventual repose. The 'tax benefit' rule disturbs that repose only if respondent had no cause to question the initial deduction, that is, if the deduction was proper at the time it was taken." Canelo v. Commissioner, 53 T.C. 217, 226-227 (1969), *573 affd. 447 F.2d 484 (9th Cir. 1971). Absent the erroneous deduction exception, the tax benefit rule would apply to the instant facts to require Hughes to recognize income in 1989 to the extent that Hughes received during that year reimbursements of any Service Costs that it deducted in taxable years prior to 1989. Respondent argues that we should reconsider our position on the erroneous deduction exception. We decline to do so. See 885 Inv. Co. v. Commissioner, 95 T.C. 156, 165-166 (1990); Davoli v. Commissioner, T.C. Memo. 1994-326; Gmelin v. Commissioner, T.C. Memo. 1988-338, affd. without published opinion 891 F.2d 280 (3d Cir. 1989). Although many Courts of Appeals have criticized or rejected the erroneous deduction exception to the tax benefit rule, see Unvert v. Commissioner, 656 F.2d at 485-486; Union Trust Co. v. Commissioner, 111 F.2d 60, 61 (7th Cir. 1940), affg. Block v. Commissioner, 39 B.T.A. 338, 341-342 (1939); Kahn v. Commissioner, 108 F.2d 748, 749 (2d Cir. 1940), *574 affg. 38 B.T.A. 1417, 1419-1420 (1938); Commissioner v. Liberty Bank & Trust Co., 59 F.2d 320, 325 (6th Cir. 1932), revg. and remanding Liberty Ins. Bank v. Commissioner, 14 B.T.A. 1428 (1929), the Court of Appeals for the Fifth Circuit, the circuit to which appeal lies in this case, has not squarely addressed the question, see Mayfair Minerals, Inc. v. Commissioner, supra.
Respondent also relies on the doctrine of quasi-estoppel. This doctrine, better known as the duty of consistency, negates the erroneous deduction exception and prevents a party from benefiting in a subsequent year from an error that was made in a prior year. Southern Pac. Transp. Co. v. Commissioner, supra at 559-560. When the duty of consistency applies, the taxpayer must recognize income even though the earlier deduction was improper. Id. at 560; Mayfair Minerals, Inc. v. Commissioner, supra at 89. The duty of consistency applies when: (1) The taxpayer made a representation or reported an item for Federal income *575 tax purposes in one year, (2) the Commissioner acquiesced in or relied on that representation or report for that year, and (3) the taxpayer attempts to change that representation or report in a subsequent year, after the period of limitations has expired with respect to the year of the representation or report, and the change is detrimental to the Commissioner. Herrington v. Commissioner, 854 F.2d 755, 758 (5th Cir. 1988), affg. Glass v. Commissioner, 87 T.C. 1087 (1986); see also Kielmar v. Commissioner, 884 F.2d 959, 965 (7th Cir. 1989), affg. Glass v. Commissioner, 87 T.C. 1087 (1986); Unvert v. Commissioner, 656 F.2d at 485; Beltzer v. United States, 495 F.2d 211, 212 (8th Cir. 1974); Mayfair Minerals, Inc. v. Commissioner, supra at 87-88. When the duty of consistency applies, the Commissioner may proceed as if the representation or report on which she relied continues to be true, although, in fact, it is not. Simply put, the taxpayer is estopped from taking *576 a position to the contrary. Herrington v. Commissioner, supra at 758. The first and third elements of quasi-estoppel are clearly present in the instant case. [6]Id. Respondent argues that the second element is also present. According to her, Hughes made an inadequate disclosure of its Service Costs on its Forms 1065, and this inadequate disclosure prevented her from making a timely adjustment to Hughes' pre-1989 taxable years. Petitioner counters that the Service Costs were fully disclosed on Hughes' Forms 1065, and, therefore, respondent should have known about the impropriety of these deductions. *577 The second requirement -- i.e., respondent acquiesced in or relied on a representation or report -- is met when a taxpayer files a return that contains an inadequately disclosed item and respondent accepts that return and allows the period of limitations to expire without an audit of that return. Herrington v. Commissioner, supra at 758. To avoid meeting the second requirement, the taxpayer must provide respondent with sufficient facts to supply her with actual or constructive knowledge of a possible mistake in the reporting of the erroneously disclosed item. Respondent may rely on a presumption of correctness of a return or report that is furnished to her under penalties of perjury, absent sufficient facts to supply her with actual or constructive knowledge to the contrary. As recently stated by the Court of Appeals for the First Circuit, the duty of consistency requires that the taxpayer's misrepresentation "must be one on which the government reasonably relied, in the sense that it neither knew, nor ought to have known, the true nature of the transaction mischaracterized by the taxpayer." Lewis v. Commissioner, 18 F.3d 20, 26 (1st Cir. 1994) *578 (citing Herrington v. Commissioner, supra at 758; Mayfair Minerals, Inc. v. Commissioner, 456 F.2d at 623; Ross v. Commissioner, 169 F.2d 483, 495-496 (1st Cir. 1948), revg. a Memorandum Opinion of this Court), vacating and remanding T.C. Memo. 1992-391. In the case at bar, we agree with respondent that Hughes did not adequately report its treatment of Service Costs on its pre-1989 Forms 1065 so that respondent knew or should have known that the costs might have been reported incorrectly. Hughes' Forms 1065 for the years relevant herein would not have informed respondent that Hughes was erroneously reporting its Service Costs. The terms "OTHER REBILLABLE EXPENSES" and "REIMBURSEMENTS FROM CLIENTS" that Hughes used to report the Service Costs on its pre-1989 Forms 1065 would not alert respondent to a possible error in the reporting of Service Costs. Thus, absent actual or constructive knowledge of a possible erroneous treatment of an item, we must hold that respondent relied on the representations in Hughes' pre-1989 Forms 1065 that the "OTHER REBILLABLE EXPENSES" *579 were properly deducted as business expenses and the "REIMBURSEMENTS FROM CLIENTS" were properly included in income as reimbursements of deductable business expenses, and, in so relying, allowed the period of limitations for those years to expire. Accordingly, we conclude that the duty of consistency requires that Hughes consistently report these erroneous items for which an adjustment is now time-barred; i.e., Hughes must continue to report as income the reimbursements of these otherwise nondeductible, but previously deducted, Service Costs. As succinctly stated by the Court of Appeals for the Fifth Circuit: "The duty of consistency is a doctrine that prevents a taxpayer from taking one position one year, and a contrary position in a later year, after the limitations period has run in the first year." Herrington v. Commissioner, supra at 757 (citations omitted). We have considered all arguments made by the parties, and, to the extent not addressed above, find them to be without merit. [7]
*580 To reflect the foregoing, Decision will be entered for respondent. Footnotes
1. Respondent also argued that the $ 422,457 adjustment is includable in Hughes' 1989 taxable income under sec. 481, I.R.C., because Hughes changed its method of accounting with respect to these client expenses. Based on our holding that the doctrine of quasi-estoppel requires Hughes to include this amount in its 1989 income, we do not decide whether sec. 481, I.R.C.↩, also applies to the facts at hand.
2. The parties have stipulated that the $ 2,398,825 of Service Costs consisted of $ 1,908,509 in Service Costs paid and deducted in 1989 and $ 490,766 in Service Costs paid and deducted in taxable years before 1989. The parties have not explained the $ 450 difference between the total Service Costs and the aggregate of the components thereof.↩
3. Two weeks later, as of April 15, 1992, the period of limitations expired with respect to all of Hughes' taxable years before 1989.↩
4. Although the record does not contain the Forms 1065 that Hughes filed for its taxable years before 1989, the parties have stipulated (and testimony at trial supports the fact) that Hughes had consistently followed this practice for reporting its Service Costs on all of its tax returns filed for the pre-1989 taxable years.↩
5. Respondent allowed this bad debt deduction for Service Costs that were not reimbursed and were written off by Hughes.↩
6. According to petitioner, the first and third requirements have not been met because Hughes did not manipulate the facts underlying its deduction of the Service Costs in order to obtain a tax benefit, and Hughes is not voluntarily changing its treatment of Service Costs. We do not read these requirements so narrowly as to require a manipulation or a voluntary change. See, e.g., Herrington v. Commissioner, 854 F.2d 755, 758 (5th Cir. 1988), affg. Glass v. Commissioner, 87 T.C. 1087 (1986); Unvert v. Commissioner, 72 T.C. 807, 816 (1979), affd. on other grounds 656 F.2d 483↩ (9th Cir. 1981).
7. We note that Hughes argued that the recovery of the erroneous deductions was not includable in its 1989 income because some of Hughes' partners during 1989 were different from Hughes' partners during the years in which the erroneous deductions were taken. We expressly reject this argument as a defense to the duty of consistency. For this purpose, we regard the partnership as an entity.↩